NOT RECOMMENDED FOR PUBLICATION OR CITATION

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION at LEXINGTON

CIVIL ACTION NO. 08-CV-195-KSF

SANDRA HERNANDEZ                                                                PLAINTIFF

VS:                         **MEMORANDUM OPINION AND ORDER**

UNITED STATES OF AMERICA                                              DEFENDANT

**** **** **** **** ****

   This matter is before the Court on the several dispositive Motions of the parties. The Court will grant the Defendant's Motion for Summary Judgment because the Plaintiff has failed to present the necessary components of a negligence claim, and the Defendant is entitled to judgment as a matter of law.

## BACKGROUND

   Sandra Hernandez, a Federal Bureau of Prisons inmate who is currently confined in the Federal Correctional Institution ("FCI"), in Danbury, Connecticut, is prosecuting this case *pro se* and *in forma pauperis*. She has claimed that while she was previously incarcerated in the Federal Prison Camp ("FPC"), in Lexington, Kentucky, which is in the Eastern District of Kentucky, her treating physician at the prison neglected her medical complaints.[1] She seeks damages under the Federal Tort Claims Act ("FTCA"), Title 28 U.S.C. §§ 1346(b), 2671-2680.

---

[1] Plaintiff has also alleged that the doctor was deliberately indifferent to her serious medical needs in violation of the Eighth Amendment prohibition to the U. S. Constitution. This claim and a First Amendment retaliation claim are no longer before the Court because Hernandez did not exhaust these claims prior to filing the instant lawsuit. *See* D.E. 10 (citing 28 U.S.C. § 1997(e)) and D.E. 16.

Plaintiff specifically claims that she has a history of "back pain/injuries 2005-present," for which she was successfully treated prior to her incarceration, but at the FPC-Lexington this condition – and others – were not treated appropriately.  She alleges that she "made several sick-call appointments for complaints of her back pain/spinal deformities, facial sores/cysts, muscle spasms, and swelling in her hands, knees, and feet," but Dr. Clancy did not adequately treat any of them.

Plaintiff was incarcerated at the Lexington facility, from June 16, 2005, to February 28, 2007. She claims that during that time, Dr. Clancy refused to order x-rays, send her to a physical therapist for evaluation, arrange for a dermatologist, or otherwise treat these conditions consistent with medical care which she received from other doctors prior to her incarceration and/or after her transfer from FPC-Lexington to FCI-Danbury.

Upon the Plaintiff's demonstration that she had exhausted the FTCA administrative process, this Court ordered service of summons on the United States, the only proper defendant in an FTCA action.  28 U.S.C. §§ 1346(b), 2401(b), 2679(a); *Allgeier v. United States*, 909 F.2d 869 (6th Cir. 1990); *Allen v. Veterans Admin.*, 749 F.2d 1386, 1387 (9th Cir. 1984).  The Defendant responded to the Complaint with a Motion for Summary Judgment and the Plaintiff has now countered with two of her own Motions for Summary Judgment and a Motion for the United States to be held in contempt pursuant to Fed.R.Civ.P. 56(g).

## UNITED STATES' MOTION

With the supporting declaration of Dr. Clancy, the Defendant contends that the Plaintiff has not presented a *prima facie* case of negligence herein, and therefore, the government is entitled to summary judgment.

As to the facts, the Doctor admits that he became Hernandez's treating physician after her

arrival.  He declares that he reviewed her available medical records for the years prior to her

incarceration, from December 28, 2002, through October 18, 2004, the date when she terminated

physical therapy for her back, giving "personal reasons" as the reason for her termination.[2]  Dr.

Clancy claims that after studying her records and examining her, he disagreed with the therapist who

diagnosed "mild scoliosis."  Also, he alleges that he believed that her prior treatment had been

successful, as her back problem was evidently under control and he found no objective evidence on

which to base any further treatment.  Therefore, he initially told her to continue to perform the

exercises which earlier physical therapists had taught her.

Hernandez's other reported condition upon arrival at the jail was a rash on her face.  The

doctor declares that this was actually "cystic acne," which  he treated with different antibiotics and

different dosages during the 20 months that she was at FPC-Lexington.  He states that the condition

improved over the time she was his patient, and this is standard medical care for such a condition.

As to the swelling and pain in her feet and knees, to which Plaintiff alluded upon intake, he declares

that he noted no swelling of her extremities.

Clancy's  care of the Plaintiff ended at an December 27, 2006, appointment, when "Plaintiff

became highly upset and argumentative," such that the appointment was terminated.  This was the

last time that he saw her.  The doctor attests that by that time, he had provided "standard medical

treatment for her back condition" and he details that care.  He further contends that her back-related

problems remained unchanged during the duration of her care at FPC-Lexington.

As to applicable law, the Defendant summarizes the standards for granting summary

---

[2]  The Court finds no significance in this bit of information about the Plaintiff.  The Court is not surprised that
Plaintiff chose to tell her outside medical providers that she was terminating for personal reasons, rather than saying that
she was preparing to go to prison.  Her date of commitment was June 16, 2005.

judgment, for proceeding with an FTCA claim, and for satisfying Kentucky negligence law. The United States claims that the Plaintiff has not shown a breach of standard medical care and that the elements of causation and harm are also missing in this case. Therefore, summary judgment should be entered in its favor.

### Plaintiff's Responses

The Plaintiff has countered with her own Motions for Summary Judgment [Record Nos. 33, 38], insisting that she is entitled to the relief requested, as her back and face conditions were serious medical needs which Dr. Clancy refused to treat the way other medical professionals have treated them.

Hernandez provides medical records from before, during, and after her incarceration at FPC-Lexington; her own declaration; pictures of her face, one taken 2005 and two others which are undated but were allegedly taken at Danbury; and unsworn statements from fellow inmates at Danbury attesting to how crippling her back condition is and how her skin has improved since her arrival there.

Additionally, after repeating some of these same arguments in her second Motion for Summary Judgment, Hernandez attacks Dr. Clancy's declaration, accusing him of perjury. She also cites case law which, unfortunately, refers to the standards for dismissal of a Constitutional claim upon initial screening, not at the summary judgment stage. Additionally, the Plaintiff argues that she is entitled to Judgment because the Defendant has defaulted by not filing a response to her initial Motion for Summary Judgment.

### Defendant's Response

The Defendant has filed a Response [Record No. 39] to Plaintiff's second Motion for

4

Summary Judgment. The government repeats its position that the doctor merely continued with what had been successful treatment before Hernandez's incarceration. The United States again points to the doctor's declaration wherein he insists that her back condition was the same as it was at the beginning and that her facial condition was improved by his treatment. The Defendant also characterizes certain of Plaintiff's arguments as irrelevant.

### Final Pleadings

In a final Motion, the Plaintiff further complains of the doctor's declaration, this time contending that it was submitted in bad faith and should be sanctioned under Fed.R.Civ.P. 56(g). [Record No. 40] She refers to specific portions thereof, pointing out that Clancy never ordered the physical therapy evaluation which he attests to having offered at that last argumentative appointment; and she admits that she was "upset" at that time, but insists that she was not "argumentative," as the Defendant has described her.

The Defendant's final pleading is a Response [Record No. 43] opposing summary judgment and any sanction. The government argues that Hernandez's submissions are unsworn, contradictory, and conclusory. Additionally, the government points to Fed.R.Civ.P. 55(a), which permits entry of a default judgment only when the defendant fails to "plead or otherwise defend," and that is not the situation herein.

### DISCUSSION

The United States Bureau of Prisons has a duty to provide adequate medical care to a prisoner. 18 U.S.C. § 4042; *see also Lopez v. United States*, 2005 WL 2076593, 14 (E.D.N.Y. 2005); *Yosuf v. United States*, 642 F.Supp. 415, 427 (M.D.Pa.1986). If federal employees do not provide that adequate medical care, they can be sued individually for damages if they were

deliberately indifferent to the prisoner's serious medical needs in violation of the U.S. Constitution (*Estelle v. Gamble*, 429 U.S. 97, 104 (1976)), or the government can be sued if the employees were negligent in the care provided (*United States v. Muniz*, 429 U.S. 97, 104 (1976)).

On her FTCA claim form asserting negligence, Plaintiff typed that she had "been *medically neglected with deliberate indifference* when . . . Dr. Stephen M. Clancy failed to provide the claimant with the proper adequate care she needs."  Record No. 3, Attachment dated April 22, 2008 (emphasis added).  Thus she has used both a derivative of the word for negligence and also the language for stating a constitutional claim.  However, she has chosen to exhaust only the FTCA's administrative process and thereafter file suit on her negligence claim.

### The FTCA

The FTCA, subject to numerous exceptions, waives the sovereign immunity of the United States government and confers subject matter jurisdiction on the federal district courts to hear tort actions against the federal government for the negligence of its employees.  In relevant part, the FTCA authorizes suits against the government to recover damages:

> for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.

28 U.S.C. § 1346(b)(1).

Congress restricted the FTCA to circumstances in which "a private individual [would be liable] under like circumstances." 28 U.S.C. § 2674.  It provides the exclusive remedy for tort actions against the federal government, its agencies and employees.  *Ascot Dinner Theatre v. Small Business Admin.*, 887 F.2d 1024, 1028 (10th Cir. 1989).   Federal prisoners are included as possible plaintiffs.

6

*United States v. Muniz,* 374 U.S. 150 (1963).  *See also* 28 U.S.C. § 1346(b)(1); *Sosa v. Alvarez-Machain,* 542 U.S. 692, 700 (2004).

"As a general rule, domestic liability on the part of the federal government under the Federal Tort Claims Act is determined in accordance with the law of the state where the event giving rise to liability occurred.  28 U.S.C. §§ 1346(b) § 2674; *Friedman v. United States,* 927 F.2d 259, 261 (6th Cir. 1991) . . . ."  *Young v. United States,* 71 F.3d 1238, 1242 (6th Cir. 1995).  This extends to claims of medical malpractice.  See *Vance v. U.S.,* 90 F.3d 1145, 1148 (6th Cir.1996); *Sellers v. U.S.,* 870 F.2d 1098, 1101 (6th Cir.1989); and *see Federal Deposit Ins. Corp. v. Meyer,* 510 U.S. 471, 478 (1994) (In a federal tort claims action it is the law of the state where the events occurred that controls).

As the complained-of events in this case took place in Kentucky, the Court must look to Kentucky law.  In Kentucky, a *prima facie* case of medical negligence must include proof of the following elements: (1) a duty of care; (2) breach of that duty; (3) actual injury, and (4) the injury was proximately caused by the negligence. *Mullins v. Commonwealth Life Ins. Co.*, 839 S.W.2d 245 (Ky. 1997); *Ferguson v. United States Army*, 938 F.2d 55 (6th Cir. 1991) (citing *Deutsch v. Shein*, 597 S.W.2d 141, 143 (Ky. 1980)); *M&T Chemicals, Inc. v. Westrick*, 525 S.W.2d 740 (Ky. 1975).

Expert testimony is generally required to show that a medical provider failed to conform to the applicable standard of care and caused the plaintiff's injury.  *See Vance by and through Hammons v. United States,* 90 F.3d 1145, 1148 (6th Cir. 1996) (citing *Perkins v. Hausladen,* 828 S.W.2d 652, 655-56 (Ky.1992)); *Jarboe v. Harking,* 397 S.W.2d 775, 777-78 (Ky.1965).  The expert's opinion must be based "on reasonable medical probability and not speculation or possibility." *Sakler v. Anesthesiology Associates, P.S.C.,* 50 S.W.3d 210, 213 (Ky.App. 2001).

Additionally, if there is a claim based upon a delay in the prisoner's obtaining proper treatment, the inmate "must place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment. . . ." *Napier v. Madison County,* 238 F.3d 739, 742 (6th Cir.2001)(quoting *Hill v. Dekalb Reg'l Youth Det. Ctr.,* 40 F.3d 1176, 1188 (11th Cir.1994))); *Loggins v. Franklin County, Ohio,* 2007 WL 627861 at *5.

Kentucky recognizes the common knowledge exception to the need for an expert and will not require an expert "where the common knowledge or experience of laymen is extensive enough to recognize or to infer negligence from the facts." However, proper treatments for lower back pain, skin eruptions on the face, swollen joints, and Plaintiff's other conditions are not common knowledge, and the Court finds that this exception is therefore, inapplicable herein. *Jarboe*, 397 S.W. 2d at 778.

### Summary Judgment Standards

Summary judgment should be granted if the "pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c) (2007). "[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corporation v. Catrett*, 477 U.S. 317, 322 (1986).

In considering cross motions for summary judgment, the evidence, all facts, and any inferences that may be drawn from the facts must be viewed in the light most favorable to the nonmovant. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986);

8

*Woythal v. Tex-Tenn Corp.*, 112 F.3d 243, 245 (6th Cir.), *cert. denied,* 522 U.S. 967 (1997).

In evaluating the appropriateness of summary judgment, three steps are necessary: (1) determining whether a fact is material; (2) determining whether there is a genuine issue for the trier of fact, as determined by the documents submitted to the court; and (3) considering that evidence in light of the appropriate standard of proof. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

Under this approach, as to materiality, only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment, and factual disputes which are irrelevant or unnecessary will not be considered. *Id.* Whether this Plaintiff requested a work pass or was upset versus argumentative may be issues in dispute, but they are not material to her legal claim. Further, where there is a complete failure of proof concerning an essential element of the nonmoving party's case, all other facts are rendered immaterial, and the moving party is entitled to judgment as a matter of law. *Celotex,* 477 U.S. at 323.

### Application

When a defendant moves for summary judgment on the ground that the plaintiff lacks evidence of an essential element of the plaintiff's claim, as the Defendant has done in the present case, Rule 56 requires the Plaintiff to present evidence of evidentiary quality that demonstrates the existence of a genuine issue of material fact. *Celotex Corp.,* 477 U.S. at 324. The instant Plaintiff's responses fall far short of the mark, as she has offered proof of not even the first of the four requisites for a medical negligence claim, *i.e.*, the requisite standard of care.

Here, despite the allegations and documents which Plaintiff has provided, she has failed to produce any expert evidence to substantiate her medical malpractice claims. As to the initial

9

component, the only medical standards of care are presented by the Defendant, *via* Dr. Clancy's declaration. In it, the doctor attests to having provided care which was consistent with the standard medical treatments for her conditions. He prescribed several antibiotics/ointments and adjusted her dosage of them with the result that her skin condition improved. With regard to her back problem, Dr. Clancy attests to providing

> the standard medical treatment for her back condition at FMC Lexington: patient education; instruction on home care exercises; painkillers; limited medical restriction (pass to use the elevator); and a proposed physical therapy plan, as needed.

Record No. 30, Attached Declaration of Clancy. Finally, he claims not to have made any diagnosis as to swollen extremities and not to have found any other treatment "medically-indicated, based on my examination of her and review of her prior medical records." *Id*.

As to either of her two main medical concerns, Plaintiff has not suggested that she has obtained an expert who can and will set out a standard of care which the prison's treatment of her breached.

Under Kentucky law, without expert substantiation, the Plaintiff cannot establish a case of medical malpractice, because she will not be able to controvert Dr. Clancy's declaration and satisfy the first two elements of a negligence claim, *i.e.*, the standard of care for each condition and the actions which the doctor did or failed to do which amount to a "breach" of the duty of care.

Without an expert, Hernandez also fails with regard to the injury and causation requirements for a negligence claim. In the section of the FTCA form asking the nature and extent of each injury, Hernandez has responded with the following description of her injuries:

> Severe multiple back injuries. Further medical complications for Lordosis and Scoliosis deformities. Severe facial scaring [sic] and perminent facial trauma. physical, mental and emotional distress. Severe uncontrolable spasms, rectal and

10

> bladder spasms.  Future complications to bare children.  Possible paralyzation if unsuccessful spinal surgery.  Claimant is presently disabled.  Severe pain and swelling in hands, knees, and feet.

Record No. 30, Attachment 30-4.  These alleged injuries are substantial, but without an expert, Plaintiff fails to establish a causal connection between them and Dr. Clancy's treatment.  Thus the lack of material evidence of injury or evidence going to cause is as fatal to Hernandez's claim as the lack of evidence of  a standard of care.

In short, the Plaintiff fails to provide evidence – or even the promise of evidence – going to negligence to support her claim. Hernandez essentially asks the Court to do what she has done, *i.e.*, examine her pre- and post- Lexington medical records, find her treatment for the same conditions elsewhere to be the proper standard of care, and conclude that Dr. Clancy failed to meet the standard of care.  However, this would be speculative, and it is not the role of this Court.  It is the Plaintiff's burden to find a doctor who will testify to the standard of treatment of each condition and testify that in his or her expert opinion, the standard was breached by the federal employee(s) in this case.  It is simply insufficient for Hernandez to provide a stack of pages from her medical records, expect them to speak for themselves, and rely on the differences of care to show that "different" means "wrong" or "non-standard" care.

For example, one page of the medical records shows that upon her arrival at FPC-Lexington, Plaintiff reported her skin problems, "swelling lordosis/scoliosis pain in feet and knee," and "CBP" (chronic back pain) which she ranked a 3 on a scale of pain from 1 to 10.  That day, she was given an ointment for her face and a lower bunk in consideration of her back problem, but Dr. Clancy ordered her to continue her current physical therapy exercises until he could review her history.  What was the proper initial approach to each of these medical conditions?

11

It is only with expert help that a decision maker can know what the standard of care was. Were the two (2) prescription changes from the original ointment within the first four (4) months appropriate to the standard of care? What is the significance, if any, in the fact that the facial eruptions were biopsied in May of 2006, midway through her stay at the FPC-Lexington facility? Similarly, she received ibuprofen for back pain, but what is a proper prescription for a patient who has a history of drug dependence? Plaintiff has proven only that the medical employees at FCI-Danbury have done things differently and have obtained a better result -- in her opinion as a layman.

No medical treatment is a panacea. Some conditions do not respond well to what is, nonetheless, proper treatment. *See Borja v. United States*, 2006 WL 3042962, *8 (M.D.Pa. 2006) (not reported). Dr. Clancy tried several different antibiotics and varied the dosages for Hernandez's skin condition. If another drug or sun-screen achieved a better outcome at FCI-Danbury, it does not establish that Dr. Clancy did anything wrong or that FCI-Danbury is the established standard or care. Similarly, since the Plaintiff had already had x-rays of her back and had been through a physical therapy evaluation only months before arriving at the prison, there may not have been a reason for Dr. Clancy's initial wait-and-see-approach. However, such speculation by the Court is improper when Kentucky law requires an expert to set the standard of care in a challenged medical decision.

For an application of these principles in factually similar FTCA cases, see *Shedden v. United States*, 101 Fed.Appx. 114, 2004 WL 1327926, **2 (6th Cir. 2004) (not reported) ("[Plaintiff] did not present or allege in his complaint the existence of any expert testimony which would establish that the medical treatment he received was substandard . . . a matter to be resolved in a motion for summary judgment."); *Matthews v. Robinson*, 52 Fed.Appx. 808, 2002 WL 3180901 (6th Cir. 2002) (not reported) (affirming dismissal on the ground that Plaintiff with back pain failed to retain or

12

employ any expert witnesses to testify in support of his medical malpractice claim, the appellate court citing Kentucky negligence case law).

This result is also consistent with policy considerations when the federal courts entertain medical claims brought under the civil rights statute, *i.e.*, a federal court will not second-guess the judgment of medical professionals who make diagnoses and decisions about treatment. *Estelle*, 429 U.S. at 107. A court must

> distinguish between cases where the complaint alleges a complete denial of medical care and those cases where the claim is that a prisoner received inadequate medical treatment. Where a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law.

*Westlake v. Lucas*, 537 F.2d 857, 860 (6th Cir. 1976). There is no reason that the same policy should not prevail in negligence claims against the government. There is no reason for this Court to second-guess medical judgments which are alleged to be ineffective or negligent.

The moving party has the burden of showing there is an absence of evidence to support a claim. *Celotex*, 477 U.S. at 324-25. After the moving party carries its burden, the non-moving party must go beyond the pleadings to designate by affidavits, depositions, answers to interrogatories, and admissions on file, specific facts showing that there is a genuine issue of material fact for trial. *Id.* If the non-moving party completely fails to prove an essential element of his or her case, then all other facts are rendered immaterial. *Id.* at 322-23.

The United States has shown that there is an absence of evidence to support the medical negligence claim against it (*Celotex*, 477 U.S. at 324-25). The Plaintiff, however, has failed to carry her burden to come forward with "affirmative evidence to defeat a properly supported motion for

13

summary judgment" (*Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 257). The Plaintiff's allegations and exhibits do not defeat the Defendant's supported Motion for Summary Judgment. *Matsushita*, 475 U.S. at 587. Therefore, the Defendant's Motion will be granted and the Plaintiff's Motions will be denied.

## CONCLUSION

Accordingly, the Court finding no *prima facie* case of negligence herein and the Defendant being entitled to judgment as a matter of law, **IT IS ORDERED** as follows:

(1)    The Defendant's Motion for Summary Judgment [Record No. 30] is **GRANTED.**

(2)    Plaintiff's Motions for Summary Judgment [Record No. 33, 38] are **DENIED**.

(3)    Defendant's Motion for Order [Record No. 40] is **DENIED**.

(4)    This action is **DISMISSED** and Judgment shall be entered contemporaneously with this Memorandum Opinion and Order in favor of the Defendant.

This the 5th day of June, 2009.



**Signed By:**

**_Karl S. Forester_** *KSF*

**United States Senior Judge**

14